UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAMELA STEARNS DEVITO,

    Plaintiff,

v.                                                                                              Case No: 8:21-cv-59-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

    Plaintiff Pamela Stearns Devito seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

    Plaintiff filed an application for a period of disability and disability insurance benefits on March 5, 2019. (Tr. 172–73.) The Commissioner denied Plaintiff's claim both initially and upon reconsideration. (Tr. 80–103.) Plaintiff then requested an administrative hearing. (Tr. 163–68.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 52–79.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied

Plaintiff's claim for benefits. (Tr. 15–29.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–6, 163–68.) Plaintiff then timely filed a complaint with this court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g).

      **B.**      **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1960, claimed disability beginning on April 10, 2012. (Tr. 181, 198.) Plaintiff has a bachelor's degree. (Tr. 65.) Plaintiff has past relevant work experience as a personnel manager and director of benefits. (Tr. 59, 189.) Plaintiff alleged disability due to major depression, anxiety/panic disorder, obstructive sleep apnea, hypersomnia with OSA, and hypothyroidism. (Tr. 81, 93, 188.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since April 10, 2012, the amended alleged onset date. (Tr. 17.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: chronic fatigue syndrome, hypothyroidism, obstructive sleep apnea, hypersomnia, and obesity. (Tr. 17.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22.) The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) "to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except climbing balancing, stooping, kneeling, crouching, and crawling would be restricted to occasional." (Tr. 22.) The ALJ further concluded that Plaintiff "should have no

concentrated exposure to extreme cold, extreme heat, hazards, or fumes, odors, dusts, gasses, or other pulmonary irritants." (Tr. 22.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of medically severe impairments from the amended alleged onset date through the date last insured, these impairments did not impose greater limitations than those set forth in the formulated RFC. (Tr. 28.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could perform her past relevant work as a personnel manager as generally performed in the national economy. (Tr. 28.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 29.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA), in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These

regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such

deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) Plaintiff's RFC was not supported by substantial evidence, and (2) the Appeals Council failed to consider new evidence submitted after the ALJ's decision. Plaintiff further moves for remand pursuant to sentence six of 42 U.S.C. § 405(g). For the reasons that follow, these contentions do not warrant reversal or remand.

### A. The ALJ's Decision was Supported by Substantial Evidence

Plaintiff argues that the ALJ's assessed RFC fails to account for the severity of Plaintiff's chronic fatigue and thyroid disorder. (Dkt. 25 at 6.) According to Plaintiff,

the ALJ also erred by failing to account for her non-severe mental limitations in the RFC and in the hypothetical posed to the VE. (*Id.*)

Before formulating an RFC, the ALJ must consider the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). Basic work activities include the following:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).

At step two of the sequential analysis, the ALJ found Plaintiff had the following severe impairments: chronic fatigue syndrome, hypothyroidism, obstructive sleep apnea, hypersomnia, and obesity. (Tr. 17.) However, the ALJ found Plaintiff's medically determinable mental impairment of major depressive disorder, as well as her alleged impairments of anxiety, panic disorder, and obsessive-compulsive disorder, to be non-severe. (Tr. 18–19.) Plaintiff has the burden of proving her impairments are severe. *McDaniel v. Bowen*, 800 F.2d 1026, 1030–31 (11th Cir. 1986).

In determining the severity of Plaintiff's mental impairments, the ALJ conducted a Psychiatric Review Technique (PRT) assessment, which examined

Plaintiff's ability to understand, remember, and apply information, interact with others, concentrate, persist, and maintain pace, and adapt or manage herself. (Tr. 19–21.) The ALJ found Plaintiff's mental impairments caused a "mild" limitation in each of these four broad functional areas, or "paragraph B" criteria. (Tr. 19–21.) The ALJ also found that Plaintiff's mental impairments caused no more than a minimal limitation on her ability to do basic work activities. (Tr. 21.) The ALJ's decision was based in part on the evidence of Plaintiff's daily activities, such as her ability to apply for jobs online during the day, participate in telephonic interviews, prepare meals, do light household tasks, shop online, and manage her personal finances. (Tr. 20, 67, 200–07.) The ALJ considered Plaintiff's daily activities as well as her reports of memory loss, panic attacks, and difficulty handling stress. (Tr. 200–07.) The ALJ also considered Plaintiff's treatment records which evidenced normal memory, cooperative behavior, normal attention span and concentration levels, and the ability to follow written instructions. (Tr. 19–21.) Lastly, the ALJ highlighted the reports from one of Plaintiff's psychiatrists, Dr. Michael Sheehan, from August through December 2015, which indicated Plaintiff "appeared healthy and well-groomed, with appropriate, cooperative behavior, goal directed thought processes, good immediate recall, and good judgment." (Tr. 21, 531–54.)

"A non-severe impairment is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). The ALJ acknowledged Plaintiff's treatment for

depression, anxiety, panic disorder, and obsessive-compulsive disorder. But despite these symptoms, the ALJ found that Plaintiff's medical records consistently noted Plaintiff had a "normal mood and affect." (Tr. 20, 275, 278, 290, 295, 315–16, 329, 333, 371, 377, 395, 400, 403, 410, 439, 450.)

Plaintiff also contends the ALJ failed to account for the combined effect of Plaintiff's thyroid disorder, depression, and chronic fatigue on her ability to sustain the focus and concentration necessary for a full-time job. (Dkt. 25 at 8.) Plaintiff correctly asserts that the ALJ has a duty to consider the combined effects of a claimant's physical and mental impairments and determine whether the combined impairments cause the claimant to be disabled. *Bowen v. Heckler*, 748 F.2d 629, 634–35 (11th Cir. 1984) (citations omitted); *see also* 20 C.F.R. § 404.1523. Nevertheless, the ALJ's decision considered Plaintiff's impairments in combination when determining whether the impairments met a listing outlined in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ explained: "I have reviewed all the evidence and conclude that the claimant's impairments, singly and in combination, do not meet or equal the severity of any listed impairment." (Tr. 22.) Specifically, the ALJ held: "[p]articular consideration was given to Section 9.00, *Endocrine disorders*; as well as listings 12.02, *Neurocognitive disorders*; 12.04, *Depressive, bipolar and related disorders*; 12.06, *Anxiety and obsessive-compulsive disorders*." (Tr. 22.) The ALJ also considered the combined effect of Plaintiff's chronic fatigue and depression in the PRT and RFC assessments by comparing Plaintiff's subjective symptoms with the mental status examinations in the

treatment records.  (Tr. 19–28.)  Given the medical evidence and the ALJ's analysis of Plaintiff's symptoms, substantial evidence supports the ALJ's decision.

Plaintiff also argues that the ALJ erred by failing to include mental limitations in the RFC.  (Dkt. 25 at 6.)  According to Plaintiff, the ALJ should have considered Plaintiff's mild limitations from the PRT assessment when determining whether Plaintiff would be able to return to past work.  (*Id.* at 9.)  Defendant disagrees, noting that the ALJ's finding of mild limitations in the PRT does not give rise to a functional limitation that would preclude past relevant work.  (Dkt. 30 at 7.)

Despite establishing that Plaintiff did not have a severe mental impairment and that none of the alleged impairments met or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ properly continued with the sequential analysis.  Because the ALJ found that Plaintiff suffered from severe physical impairments at step two, he proceeded and formulated Plaintiff's RFC.  *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)) (recognizing that "step two requires only a finding of 'at least one' severe impairment to continue on to the later steps").  In formulating the RFC, the ALJ must consider all relevant evidence in the record, including evidence of non-severe impairments.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  Even if the ALJ erred in finding Plaintiff's mental impairments non-severe, such error is harmless if the ALJ gives "full consideration to the consequences of [the claimant's] mental impairments on his ability to work at later

stages in the analysis." *Delia v. Comm. of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011).

The undersigned is not persuaded by Plaintiff's contention that the ALJ erred in failing to include mental limitations in Plaintiff's RFC assessment. The ALJ is not required to include a mental limitation in the RFC simply because he identified "mild" mental limitations in the PRT assessment. *Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) (rejecting Plaintiff's assertion that the ALJ failed to include a mental limitation in the RFC assessment where the ALJ correctly *addressed* Plaintiff's "mild" limitations in the analysis); *see also Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979–80 (11th Cir. 2016) (holding that the ALJ did not err by omitting mental limitations based on claimant's depression where the ALJ took this impairment into account and "found that Williams had only 'mild' limitations based on this impairment"); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6–7 (M.D. Fla. June 9, 2014) (holding that the RFC was supported by substantial evidence when it contained no functional limitations based on a mental impairment—even though the ALJ identified mild limitations in the PRT criteria—because non-severe limitations do not significantly interfere with the ability to work).

Here, the ALJ properly addressed Plaintiff's mental limitations in the RFC analysis. In his decision, the ALJ stated the "residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 21.) The "paragraph B" analysis identified mild limitations in

understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adapting or managing oneself. (Tr. 19–21.) In formulating the RFC, the ALJ also pointed out that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." (Tr. 22.) Plaintiff's RFC limited her to less than the full range of sedentary exertional work, which did not include any functional limitations that relate to a mental impairment. (Tr. 26–27.) However, when listing Plaintiff's RFC limitations, the ALJ notes "[t]hese restrictions take into consideration medication side effects and the claimant's non-severe impairments present from the amended alleged onset date through the date last insured. . . ." (Tr. 27.) Additionally, the ALJ addressed Plaintiff's persistent fatigue and her ability to concentrate in the RFC, noting medical records that show Plaintiff exhibited normal judgment, insight, attention, and concentration. (Tr. 24–26, 275, 278, 290, 295, 315–16, 329, 333, 371, 377, 395, 400, 403, 410, 439, 450.) Because the ALJ correctly addressed Plaintiff's impairments in the RFC, and substantial evidence supports his conclusion that Plaintiff's mental impairments are non-severe, the ALJ was not required to include a specific mental limitation in Plaintiff's RFC.

Next, Plaintiff correctly maintains that the ALJ is required to ask the vocational expert comprehensive hypothetical questions that accurately describe Plaintiff's impairments. (Dkt. 25 at 9.) *See, e.g.*, *Wilson*, 284 F.3d at 1227; *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). If the hypothetical question posed by the ALJ does not comprise all of Plaintiff's severe impairments, the vocational expert's testimony

will not constitute substantial evidence. *Wilson*, 284 F.3d at 1227. Notably, the ALJ may omit "non-severe impairments." *Loveless v. Massanari*, 136 F. Supp. 2d 1245, 1250–51 (M.D. Ala. 2001) (citing *Pendley*, 767 F.2d at 1563); *see also Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1161 (11th Cir. 2004)) ("An ALJ is 'not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported.'"). As the ALJ determined that Plaintiff's mental impairments were non-severe, the hypothetical questions proposed to the VE were sufficiently comprehensive and the VE's testimony was supported by substantial evidence.

### B. New Evidence Submitted to Appeals Council Does Not Warrant Remand

A sentence four remand under 42 U.S.C. § 405(g) may be ordered if "the claimant can show, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013) (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266–67 (11th Cir. 2007)). "'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram*, 496 F.3d at 1261). The Appeals Council, while not required to make specific findings of fact, must consider additional evidence that is new, material, and chronologically relevant. *Ingram*, 496 F.3d at 1261. To be considered "new," evidence cannot be

cumulative of the evidence already submitted to the ALJ. *Washington v. Soc. Sec. Admin, Comm'r*, 791 F. App'x 871, 876 (11th Cir. 2019) (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). "[E]vidence is 'chronologically relevant' if it relates to the period on or before the date of the ALJ's hearing decision." *Washington*, 791 F. App'x at 876 (citing 20 C.F.R. § 416.1470(a)(5)). Evidence is "material if a reasonable probability exists that the evidence would change the administrative result." *Washington*, 806 F.3d at 1321. "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

Whether evidence submitted to the Appeals Council is new, material, and chronologically relevant is a question of law subject to de novo review. *Washington*, 791 F. App'x at 876 (citing *Washington*, 806 F.3d at 1321). Here, Plaintiff submitted 18 pages of new medical records to the Appeals Council. (Tr. 34–51.) These pages include psychiatric treatment records from Dr. Gregory Sullivan, Plaintiff's psychiatrist, from April 2012 through October 2014, well before the ALJ's hearing decision. (Tr. 34–40.) Although the evidence existed at the time of the ALJ hearing, the records are new because Plaintiff and her attorney were unable to retrieve the records prior to the hearing despite numerous requests made to Dr. Sullivan and a request for assistance by the SSA. (Tr. 168, 267.) The evidence is chronologically relevant as it pertains to the period between Plaintiff's amended alleged onset date and the date last insured. (Tr. 34–40.) Nonetheless, the Appeals Council found that these

records do not show a reasonable probability that it would change the outcome of the decision, and thus, did not exhibit the evidence. (Tr. 2.)

Plaintiff argues that the psychiatric records submitted to the Appeals Council are material because they would have changed the ALJ's decision to not impose any mental limitations in his RFC and hypothetical to the VE. (Dkt. 25 at 12.) Plaintiff asserts the records highlight the severity of her mental impairments, and the Appeals Council's failure to consider the records renders the decision unsupported by substantial evidence. (*Id.* at 12, 14.) In response, Defendant argues that the ALJ considered Plaintiff's depression, anxiety, and other mental status examinations in his decision, and therefore, the new evidence does not raise any substantial differences in the record that would render the ALJ's decision erroneous. (Dkt. 30 at 10.)

The treatment records from Dr. Sullivan provide additional information concerning Plaintiff's mental impairments, including her ability to concentrate and focus for extended periods of time. For example, on April 24, 2012, Dr. Sullivan reported Plaintiff's "[c]oncentration and focus were much worse." (Tr. 34). Dr. Sullivan noted that Plaintiff's major depressive disorder worsened over the winter months and that she was particularly impaired by her "very poor concentration." (Tr. 34.) The report also highlights Plaintiff's anxiety over her fear of potential panic attacks. (Tr. 34.)

In April of the following year, Dr. Sullivan reported Plaintiff's concentration and focus follows her energy, "so [concentration and focus have] not been good for months." (Tr. 36). Although Dr. Sullivan noted Plaintiff had good judgment, logical

thought, and no perceptual distortions, his findings show that Plaintiff's treatment had no impact on her severe fatigue, difficulty with focus, or ability to concentrate for extended periods. (Tr. 36.)

Dr. Sullivan's report from May of 2014 also details that Plaintiff's depressive symptoms predominated over the winter. (Tr. 39.) The report notes waxing and waning hypochondriacal anxiety, pervasive fatigue, and controlled panic disorder. (Tr. 39.) The report also mentions that Plaintiff's valacyclovir medication for treatment of precancerous lesions increased her mood, energy, and focus to the point where she "felt like [her] old self." (Tr. 39.) Dr. Sullivan then reported within two days of stopping this medication, Plaintiff fell back into her usual fatigued and depressed state. (Tr. 39.)

The final report from Dr. Sullivan, dated October 20, 2014, noted that Plaintiff's valacyclovir prescription has been effective for her mood, but the dosage caused Plaintiff stomach irritation. (Tr. 40.) After reducing the dosage, Plaintiff reported that the prescription was less effective. (Tr. 40.)

Upon review of the record evidence, the ALJ notes that much of the medical evidence is from after the date last insured. (Tr. 18, 23.) While the records from Dr. Sullivan may supplement the evidence available for the relevant period, the undersigned finds that the ALJ's decision was supported by substantial evidence. The ALJ's assessment of medical evidence from the relevant time period includes numerous mental status examinations that state that Plaintiff had a normal mood and affect, intact memory, and normal concentration levels. (Tr. 23–26, 275, 278, 290,

295, 315-16, 329, 333, 371, 377, 395, 400, 403, 410, 439, 450.)  Moreover, the ALJ was able to view psychiatric medical records from Plaintiff's subsequent psychiatrist, Dr. Michael Sheehan, from August 2015 through December 2015.  (Tr. 531–54.)  Those records indicate Plaintiff was healthy, well-groomed, behaved appropriately, euthymic, and calm.

The new evidence submitted to the Appeals Council does not suggest that the ALJ needed to provide a specific mental limitation in his RFC assessment.  Dr. Sullivan's psychiatric treatment notes alone do not undermine the ALJ's decision as the ALJ noted Plaintiff's depression, anxiety, and chronic fatigue disorder, as well as the mental status examinations performed by other physicians.  (Tr. 15–29.)  Moreover, "the Appeals Council is not required to provide 'a detailed rationale for why each piece of evidence submitted to it does not change the ALJ's decision.'"  *Washington*, 791 F. App'x at 876 (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)).  The Appeals Council's conclusion that the new evidence "does not show a reasonable probability that it would change the outcome of the decision" indicates the Appeals Council properly considered the evidence and determined it was not material. (Tr. 2.)  *See Minor v. Saul*, No. 2:19-cv-20-WC, 2020 WL 1493023, at *5–6 (M.D. Ala. Mar. 27, 2020) (finding the Appeals Council's statement that new evidence did not show a reasonable probability of changing the outcome made clear that the Appeals Council implicitly found that the evidence was not material).  Thus, the undersigned finds that the new evidence does not present a

reasonable possibility that the ALJ's decision would have been different. As a result, the Appeals Council did not err.

### C. A Sentence Six Remand is Not Warranted

Finally, Plaintiff seeks remand under sentence six of 42 U.S.C. § 405(g) to require the Commissioner to consider evidence that her counsel declined to submit to the Appeals Council during her administrative proceedings. (Dkt. 26.) Specifically, Plaintiff seeks consideration of a cover letter Dr. Sullivan included with the psychiatric treatment records he provided to Plaintiff. (Dkt. 26-1.) Plaintiff's counsel did not include Dr. Sullivan's cover letter with the psychiatric treatment records submitted to the Appeals Council. (Dkt. 26-1.) She seeks remand for the consideration of Dr. Sullivan's cover letter.

When new evidence is submitted for the first time to the district court, the court may remand the case to the Commissioner to consider the evidence if the claimant establishes that: (1) there is new, noncumulative evidence; (2) the evidence is "material," such that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level. *Caulder*, 791 F.2d at 876–77; *see also Cherry v. Hekler*, 760 F.2d 1186, 1192 (11th Cir. 1985) ("Good cause may exist where . . . the evidence did not exist at the time of the administrative proceeding.").

The undersigned finds that Plaintiff has not shown good cause for failing to submit the evidence at the administrative level. As explained above, Plaintiff was unable to timely obtain Dr. Sullivan's records prior to the ALJ hearing. (Tr. 267.)

Nonetheless, after the unfavorable ALJ decision, Plaintiff obtained the treatment records from Dr. Sullivan along with the cover letter. On October 1, 2020, Plaintiff's counsel submitted 18 pages of Dr. Sullivan's treatment records to the Appeals Council, but counsel did not include the cover letter or other treatment records dated prior to the relevant period. (Tr. 168.) Plaintiff's counsel is "unsure why this letter was not included with the other 18 pages received by the Appeals Council." (Dkt. 26 at 3.) Although the cover letter did not exist at the time of the ALJ hearing, the letter was obtained more than six weeks before the Appeals Council denied review on November 18, 2020. (Tr. 2, 163–68.) Plaintiff has not offered any explanation concerning why Dr. Sullivan's cover letter was not submitted to the Appeals Council. Given the lack of explanation, the court is unable to find good cause for remand. *See McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 473 (11th Cir. 2016) (affirming the district court's denial of sentence six remand where claimant offered no reason for failing to submit a physician's report to the Appeals Council, even though the evidence was authored after the ALJ's decision); *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987) (finding that the good cause requirement "reflects a congressional determination to prevent the bad faith manipulation of the administrative process").

In the cover letter, Dr. Sullivan identified Plaintiff's diagnoses of "major depressive disorder with anxious features and comorbid panic disorder." (Dkt. 26-1.) He also described her symptoms including severe fatigue, poor sleep quality that is nonrestorative for daily function, significant cognitive symptoms including inability to

concentrate or focus, poor memory, difficulty making decisions, and easily becoming overwhelmed." (*Id.*)

Dr. Sullivan's cover letter does not contain information that differs from the record before the ALJ and Appeals Council. Rather, the evidence is cumulative of evidence contained in the Plaintiff's record concerning her depression (Tr. 286, 328, 375–76, 447, 583), anxiety (Tr. 328, 447, 583), panic disorder (Tr. 68, 447, 587), fatigue (Tr. 286, 291, 293, 328, 375–76, 447, 583, 586), difficulty sleeping (Tr. 313, 586), inability to focus (Tr. 72, 586), and memory (Tr. 73, 493, 554, 590, 593). Cumulative evidence is not new and material and is not likely to change the administrative outcome. *Timmons*, 522 F. App'x at 903–04. The ALJ acknowledged Plaintiff's treatment for depression, anxiety, panic disorder, and obsessive-compulsive disorder, but despite these symptoms, the ALJ found Plaintiff's medical records consistently observed Plaintiff with "normal mood and affect." (Tr. 20, 275, 278, 290, 295, 315–16, 329, 333, 371, 377, 395, 400, 403, 410, 439, 450.) As the information in the cover letter is cumulative of other evidence and Plaintiff has not established that there is a reasonable possibility that it would change the administrative outcome, this contention does not warrant remand.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is **ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on August 19, 2022.

‎                                                JULIE S. SNEED
‎                                      UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record